

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00070-CR

RONALD LAMONT GUYTON,

                                        Appellant

 v.

THE STATE OF TEXAS,

                                        Appellee

---

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 0603643-CRF85**

---

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

---

A jury convicted Ronald Guyton of three counts of possession of cocaine with intent to deliver and assessed his punishment at fifty years' confinement for count one, two years' confinement for count two, and fifty years' confinement for count three. Guyton's appellate counsel contends in his sole point that Guyton received ineffective assistance of trial counsel. Guyton contends in a *pro se* supplemental brief that: (1) the evidence is legally and factually insufficient to prove possession with intent to deliver; (2) the trial court erred when it failed to inquire into a conflict of interest between

himself and his attorney; and (3) the State failed to give him timely notice of its intent to use prior convictions for enhancement purposes.

On original submission, this Court reversed the judgment due to factual insufficiency. *See Guyton v. State,* No. 10-07-00070-CR, 2008 Tex. App. LEXIS 8371 (Tex. App.—Waco Nov. 5, 2008). As authorized by Rule of Appellate Procedure 50, we issue this modified opinion within sixty days after the State filed its petition for discretionary review. TEX. R. APP. P. 50. On reconsideration of the issues presented, we will affirm the judgment and withdraw our prior opinion and judgment. *Id.*

**Background**

On the evening of April 26, 2006, Officers Steve Spillars and Paul Mahoney attempted to stop a white Pontiac that was allegedly operating with a defective headlight.[1] The Pontiac did not immediately pull over but continued to travel east on Highway 21 in Bryan until it turned onto Waco Street. Spillars testified that, as the Pontiac began to stop, he got out of the patrol car because he saw the back door of the Pontiac opening. Guyton, who was wearing a black baseball cap, ran from the back door of the Pontiac and was chased by Spillars. During the chase, Spillars saw Guyton throw a small object from his right hand.

When Guyton was arrested, he initially falsely identified himself as Christopher Brice Daniels. Mahoney then ran Guyton's fingerprints through the FBI and DPS databases under the name Christopher Daniels. However, when Mahoney took Guyton

---

[1] Christi French, the Pontiac's driver, testified at trial that the headlights on the Pontiac were working properly.

the fingerprint cards to sign, he signed his name as Ronald Guyton. Subsequent investigation confirmed Guyton's identity. When the officers searched Guyton, he was not carrying any contraband, and he did not appear to be under the influence of narcotics.

Spillars searched the area and located a black baseball cap, a food-coloring bottle, and two plastic sandwich bags that had been tied together. The contents of the sandwich bags and the food-coloring bottle were later tested and weighed, and forensic scientist Joel Budge testified that the bags contained .40 grams of cocaine and 3.57 grams of ecstasy. The food-coloring bottle contained 5.15 grams of PCP.

Officer Spillars testified that possession of less than a gram of cocaine would usually be charged as simple possession. He also testified that Guyton was initially charged with simple possession and not possession with intent to deliver.

Detective Robert Wilson, College Station Police Department, testified that street-level drug dealers normally carry enough drugs for only a few sales. Furthermore, a street-level drug dealer normally would not document his drug sales on a narcotics ledger, as they typically operate on a hand-to-hand basis. Street-level dealers carry a low amount of product in order to be able to quickly eat, drop, or destroy evidence if stopped by law enforcement. He also testified to the perceived effects of each of the individual drugs Guyton possessed and stated that a typical drug user would not collectively consume cocaine, ecstasy, and PCP because the drugs would counteract the effects of each other. In his opinion, the drugs possessed by Guyton were for sale and not personal use.

After a jury convicted Guyton on all three counts of possession with intent to deliver, he filed a motion for new trial claiming that he did not receive effective assistance of counsel or adequate notice of a new indictment.[2] A hearing was held, the trial court denied the motion, and this appeal followed.

## *Pro Se* Pleadings

As an initial matter, we must address Guyton's status as a *pro se* litigant before this Court. Both Guyton and his appointed appellate counsel have filed briefs in this matter. A criminal appellant has no right to hybrid representation. *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001); *Meyer v. State*, 27 S. W.3d 644, 648 (Tex. App.—Waco 2000, pet. ref'd). Generally, when an appellant has counsel and counsel has filed a brief, the appellant has no right to file a *pro se* brief. However, the prohibition on hybrid representation is not absolute. *See e. g., Warren v. State*, 98 S.W.3d 739, 741 (Tex. App.—Waco 2003, pet. ref'd). We may consider a *pro se* brief if the interests of justice require us to do so. We have reviewed Guyton's *pro se* supplemental brief and find that the interests of justice require that we address his issues. *See Williams v. State*, 946 S.W.2d 886, 892 (Tex. App.—Waco 1997, no pet.) (appellate court may consider *pro se* issue in the interest of justice even though appellant has no right to hybrid representation).

---

[2] Guyton was originally charged by indictment on July 13, 2006. He was then reindicted on December 14, 2006. The only change in the new indictment was the addition of an enhancement paragraph alleging a prior conviction for possession of a controlled substance. The effect of the enhancement paragraph was to enhance the minimum range of punishment on count one to 15 years to 99 years. Count three was enhanced to a first degree punishment range, and there was no effect of the punishment range on count two.

**Intent to Deliver**

In his first *pro se* issue, Guyton challenges the legal and factual sufficiency of the evidence to support a finding of intent to deliver.

In reviewing a claim of legal insufficiency, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Sells v. State*, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003); *Witt v. State*, 237 S.W.3d 394, 396-97 (Tex. App.—Waco 2007, pet. ref'd).

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Witt*, 237 S.W.3d at 397.

Intent to deliver may be established by circumstantial evidence. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). A number of factors are relevant to this issue: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2058, 170 L. Ed.

2d 800 (2008); *Erskine v. State*, 191 S.W.3d 374, 380 (Tex. App.—Waco 2006, no pet.). Expert testimony may also be used to establish intent. *See id*. The "number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Moreno*, 195 S.W.3d at 326.

Although a large amount of drugs, often accompanied by police officer/expert witness testimony, can show intent to deliver, such amounts are not involved here. *Cf., e.g., Pitts v. State*, 731 S.W.2d 687, 691-92 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (1,025 grams of cocaine); *see also Morrow v. State*, 757 S.W.2d 484, 487-88 (Tex. App.— Houston [1st Dist.] 1988, pet. ref'd) (3,013 grams of cocaine). The converse is likewise true, namely, that a small quantity of drugs is not alone sufficient to establish an intent to deliver. *See Brooks v. State*, No. 10-07-00309-CR, 2008 Tex. App. LEXIS 7364, at *11 (Tex. App.—Waco Oct. 1, 2008, pet. filed) (not designated for publication).[3] Thus, the quantity of drugs alone cannot establish the requisite intent if the quantity is consistent with personal use, unless supported by additional evidence.

Here, Guyton possessed 5.15 grams of PCP (approximately 20 hits), 3.57 gram of ecstasy (approximately 7 tablets), and .40 grams of cocaine (approximately 1 or 2 rocks).

---

[3]   When police in a bar approached Brooks, he tried to escape and threw two clear plastic bags towards a pool table. *Brooks v. State*, No. 10-07-00309-CR, 2008 Tex. App. Lexis 7364, at *2-3 (Tex. App.— Waco Oct. 1, 2008, pet. filed) (not designated for publication). One of the plastic bags contained 4.72 grams of cocaine and an unspecified quantity of ecstasy pills, while the other contained an unspecified quantity of marihuana. *Id*. at *3-4. An expert testified that it is unusual for a user to carry three different types of narcotics. We found the evidence legally, but not factually, sufficient because there existed no evidence of any other circumstances tending to prove intent, such as "evidence that Brooks possessed an excessive amount of cash; that the drugs were packaged in a manner indicating intent to sell; that Brooks possessed paraphernalia used in sales or transactions involving drugs; that Brooks was arrested in an area known for drug sales; or that Brooks possessed any weapons." *Id*. at *12-13. We note that we issued the opinion in *Brooks* after Guyton's counsel filed his brief in this appeal.

Spillars and Wilson testified that this quantity was consistent with a street-dealer amount, but Spillars admitted that it could also be consistent with personal use. Standing alone, these amounts are insufficient evidence of intent; additional evidence is required. *See Brooks*, 2008 Tex. App. LEXIS 7364, at *11.

The State argues that additional evidence exists for several reasons: (1) Guyton identified himself as someone else; (2) Guyton was not in possession of any drug paraphernalia for either use or sale; (3) Guyton was not under the influence of a narcotic; (4) Guyton attempted to evade capture and discarded contraband in the process; and (5) Guyton was found in possession of three different types of drugs.

Guyton responds that the evidence is legally and factually insufficient because several of the pertinent factors identified above are not present. *See Brooks*, 2008 Tex. App. LEXIS 7364, at *12-13; *Hillman v. State*, No. 02-03-00171-CR, 2004 Tex. App. Lexis 3210, at *10-11 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication).[4] But as the State correctly responds, not every factor must be established to prove intent to deliver. *See Moreno*, 195 S.W.3d at 326; *Brooks*, 2008 Tex. App. LEXIS 7364, at *8.

---

[4] 7.5 grams of methamphetamine (comprising 70 "hits" worth $700) were found hidden under the console of Hillman's vehicle. *Hillman v. State*, No. 02-03-00171-CR, 2004 Tex. App. LEXIS 3210, at *9 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication). An expert in that case testified that it is unusual for a user to carry this amount of methamphetamine because dealers commonly make alterations to their vehicles to hide drugs and users usually carry drugs on their person. *See id*. The Fort Worth Court found the evidence legally, but not factually, sufficient because there existed no evidence of any other circumstances tending to prove intent, such as "evidence that Hillman possessed an excessive amount of cash; that the drugs were packaged in a manner indicating intent to sell; that Hillman possessed any baggies, scales, or other items used in sales or transactions involving drugs; that Hillman was arrested in an area known for drug sales; that Hillman had any weapons in the car; or that Hillman tried to evade the police." *Id*. at *10-11.

There is no evidence that Guyton possessed any small baggies for packaging small amounts of contraband or that he was doing anything to exhibit an intent to deliver. There is no evidence that he had set himself up in a drug house or on a street corner where drugs were habitually sold. And there is no evidence that he attempted to pass off contraband to another person. This lack of evidence tends to contradict the jury's finding of intent to deliver.

By comparison, the evidence relevant to several of the factors appears consistent with either possession for personal use or possession for delivery. This evidence includes: (1) Guyton's falsely identifying himself; (2) his attempt to evade capture and discard contraband; (3) the quantity of the drugs in his possession; and (4) his prior conviction for possession of a controlled substance. *See Brooks*, 2008 Tex. App. LEXIS 7364, at *13.

But there is other evidence supporting the jury's finding of intent. In *Brooks*, we found the evidence factually insufficient to prove intent to deliver. *Id.* at *12-14. However, Guyton's case is different. As in *Brooks*, the State offered the expert testimony of narcotics officers who testified that the quantity of drugs in Guyton's possession was more than a user would normally carry. *Cf. id.* at *4-5. And as in *Brooks*, the officers opined that the defendant's possession of three different controlled substances was more indicative of a dealer than a user. *Id.* at *12. But Wilson went further and discussed the interaction between the various controlled substances in Guyton's possession. He explained that a typical user would not use ecstasy, cocaine, and PCP

together because their effects would counteract each other.[5] *Cf. Utomi*, 243 S.W.3d at 78, 83-84 (upholding conviction for possession of cocaine, ecstasy, and PCP with intent to deliver).

Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to establish possession with intent to deliver. *See Brooks*, 2008 Tex. App. LEXIS 7364, at *12; *Utomi*, 243 S.W.3d at 83; *Hillman*, 2004 Tex. App. LEXIS 3210, at *9-10.

And viewing the evidence in a neutral light, as required by the factual sufficiency standard of review, we likewise hold that the proof of guilt is not so weak or that conflicting evidence so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *See Utomi*, 243 S.W.3d at 83-84; *see also Watson*, 204 S.W.3d at 414-15; *Witt*, 237 S.W.3d at 397; *cf. Brooks*, 2008 Tex. App. LEXIS 7364, at *12-14; *Hillman*, 2004 Tex. App. LEXIS 3210, at *10-11.

Accordingly, we overrule Guyton's first *pro se* issue.

### Enhancement Paragraph

Guyton complains in his third *pro se* issue that he did not receive timely notice of the State's intention to enhance his punishment with a prior conviction for possession of a controlled substance.

This argument was litigated in Guyton's motion for new trial hearing. After hearing all the evidence, the court entered findings of fact supporting the prosecution's

---

[5] By contrast, the defendant in *Brooks* had cocaine, ecstasy, and marihuana. *See Brooks*, 2008 Tex. App. LEXIS 7364, at *3. There are reported cases of defendants being convicted for the combined possession of these three substances. *See, e.g., Scott v. State*, 825 S.W.2d 521, 522 (Tex. App.—Dallas 1992, pet. ref'd).

assertion that Guyton received constitutionally adequate notice of the State's intent to enhance his sentence using a prior conviction.

A defendant is entitled to notice of any prior convictions the prosecution intends to use as enhancement to the sentence the defendant is facing. *Villescas v. State*, 189 S.W.3d 290, 294 (Tex. Crim. App. 2006). These prior convictions used as enhancements must be pleaded in some form, but they need not be pleaded in the indictment. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997). Although the notice requirement is constitutional in origin, there is no specific time period for which notice must be provided. *Villescas*, 189 S.W.3d at 294. "In fact . . ., when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution." *Id.*

At the hearing on the motion for new trial, Guyton's trial counsel testified that he received the new indictment containing the enhancement paragraph on December 1, 2006, and knew on November 17, 2006, prior to the reindictment, that Guyton's sentence would be enhanced with his prior conviction. After he received the new indictment, counsel informed Guyton that his sentence in the instant case would be enhanced by a prior conviction. Counsel also testified that prosecutors informed Guyton on November 17, 2006, that if he did not accept the plea bargain offered that day, the State would reindict him and add the prior conviction as an enhancement.

At the same hearing, a jail employee testified that Guyton knew that he had been reindicted. However, Guyton complained to this employee that he had not received a

copy of this new indictment. In response, the employee found a copy of the new indictment, along with a copy of the certificate of service, which did not bear Guyton's signature, and showed them to Guyton. The certificate of service showing Guyton was served with his new indictment was admitted into evidence.

Collectively, this testimony demonstrates that Guyton received adequate notice of the new indictment. Counsel demonstrated that Guyton was informed on several occasions prior to trial by both the prosecutor and his trial counsel that his sentence was going to be enhanced using the prior conviction. Thus, the trial court did not err in finding that Guyton received constitutionally adequate notice. *Webb*, 232 S.W.3d at 112. We overrule Guyton's third *pro se* issue.

### Conflict of Interest

Guyton contends in his second *pro se* issue that the court erred when it failed to inquire into a conflict of interest between himself and his court-appointed counsel.

Guyton identifies essentially three instances when he advised the court that there were problems with the representation. First, he complained to the court before trial that he did not feel that his attorney was coming to see him and discuss the case with sufficient frequency. Next, he complained to the court during voir dire that his attorney was "not working with me" and was "siding with the prosecution." And finally, he complained during trial that his attorney was not asking questions that he wanted the attorney to ask the witnesses. When Guyton raised these complaints, the trial court briefly discussed them with him.

The trial court has discretion to determine whether counsel should be allowed to withdraw from a case. "However, the right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice." Further, personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal. A trial court has no duty to search for counsel agreeable to the defendant.

*King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (quoting *Green v. State*, 840 S.W.2d 394, 408 (Tex. Crim. App. 1992)) (footnotes omitted); *accord Gaines v. State*, No. 05-06-00599-CR, 2007 Tex. App. LEXIS 4985, at *2-3 (Tex. App.—Dallas June 27, 2007, pet. ref'd).

A trial court has an affirmative duty to conduct a hearing when it becomes aware of an actual conflict of interest. *Ramirez v. State*, 13 S.W.3d 482, 487 (Tex. App.—Corpus Christi 2000), *pet. dism'd, improvidently granted*, 67 S.W.3d 177 (Tex. Crim. App. 2001) (per curiam) (citing *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992)). Personality conflicts, disagreements regarding trial strategy and lack of communication do not ordinarily give rise to an actual conflict of interest. *See Gaines*, 2007 Tex. App. LEXIS 4985, at *3-4 (citing *King*, 29 S.W.3d at 566). Here, there was no reason for the trial court to conclude that an actual conflict existed between Guyton and his trial attorney. Thus, the court did not err by declining to hold a formal hearing to inquire into whether an actual conflict existed. *Id.* at *4. We overrule Guyton's second *pro se* issue.

### Ineffective Assistance

Guyton's appellate counsel contends in the sole issue presented in counsel's brief that Guyton received ineffective assistance of trial counsel because counsel failed to: (1)

adequately investigate the facts and interview potential witnesses; or (2) file a motion to suppress or seek an article 38.23 instruction regarding the legality of the traffic stop.

To prevail on an ineffective-assistance claim, an appellant must show by a preponderance of the evidence that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007). In the context of a claim that counsel was ineffective for failing to file a motion to suppress, prejudice is established by showing that such a motion would have been granted. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.); *Carroll v. State*, 56 S.W.3d 644, 649 (Tex. App.—Waco 2001, pet. ref'd).

We begin with a "strong presumption" that counsel provided reasonably professional assistance, and Guyton bears the burden of overcoming this presumption. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Generally, the appellate record is insufficient to satisfy this burden. *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); *Curry v. State*, 222 S.W.3d 745, 754 (Tex. App.—Waco 2007, pet. ref'd). If nothing in the record reveals the reason for the act or omission which is the basis of an ineffective assistance complaint, we may not speculate on that reason. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Curry*, 222 S.W.3d at 754; *Hajjar v. State*, 176 S.W.3d 554, 567 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Here, Guyton's trial counsel answered questions at the hearing on the motion for new trial about the complaints Guyton raises on appeal. With regard to investigating the facts of the case, Guyton's primary complaint is that his trial counsel failed to talk

with Shredick Davis, a passenger in the white Pontiac from which Guyton fled, or call him as a witness. Counsel explained that he did not consider Davis to be a credible witness because he was himself found to be in possession of marijuana on the occasion in question. Counsel provided a strategic basis for not calling Davis as a witness. Although Davis may have supported French's testimony that both headlights were operating on the occasion in question, we are not in a position to second-guess counsel's concerns about Davis's credibility. *See State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008). Thus, Guyton has failed to overcome the strong presumption that counsel provided reasonably professional assistance with regard to counsel's decision to not call Davis as a witness.

Counsel was also questioned about his decision to not file a motion to suppress or request an article 38.23 instruction in the charge with regard to whether the officers had a lawful basis for the traffic stop. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). Counsel testified that the stated basis for the traffic stop was a defective headlight. However, French testified at trial that both of her headlights were working that night. Counsel's responses on direct and cross-examination suggest that he did not pursue these issues because he did not believe that Guyton had standing to challenge the stop of the car.[6]

We assume without deciding that the evidence raises a fact issue regarding the basis for the stop and that counsel could have litigated the constitutionality of the stop

---

[6]     It appears that counsel was incorrect in this regard. *See Kothe v. State*, 152 S.W.3d 54, 60-61 (Tex. Crim. App. 2004) (passenger has standing to complain of lawfulness of vehicle stop).

in a pretrial suppression hearing and/or via an article 38.23 instruction to the jury. *See Holmes v. State*, 223 S.W.3d 728, 731 (Tex. App.—Houston [14th Dist.] 2007) (lawfulness of seizure may be challenged by: (1) pre-trial suppression motion; (2) trial objection; or (3) raising fact issue under article 38.23), *aff'd*, 248 S.W.3d 194 (Tex. Crim. App. 2008).

However, Guyton must also establish that he was prejudiced by counsel's failure to pursue these issues. *Garza*, 213 S.W.3d at 347-48. This means that Guyton must establish by a preponderance of the evidence that a suppression motion would have been granted or the jury would have found in his favor under article 38.23. *See Jackson*, 973 S.W.2d at 957; *Hollis*, 219 S.W.3d at 456; *Carroll*, 56 S.W.3d at 649.

Because Guyton can establish only the existence of a fact issue, we cannot say with any confidence that a pretrial motion to suppress would have been granted or that the jury would have found in his favor under article 38.23. *See Bollinger v. State*, 224 S.W.3d 768, 779-80 (Tex. App.—Eastland 2007, pet. ref'd). Thus, Guyton has not established that he was prejudiced by counsel's failure to file a suppression motion or seek an article 38.23 instruction. *See Jackson*, 973 S.W.2d at 957; *Hollis*, 219 S.W.3d at 456; *Carroll*, 56 S.W.3d at 649.

For these reasons, we overrule the sole issue presented in the brief filed by Guyton's counsel.

We affirm the judgment.[7]

---

[7] In accordance with Rule of Appellate Procedure 50, the opinion and judgment dated November 5, 2008 are withdrawn, and this opinion and its corresponding judgment are substituted therefor. *See* TEX. R. APP. P. 50.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurring)
Affirmed
Opinion delivered and filed February 6, 2009
Do not publish
[CRPM]